# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-06-00016-CR

**Ex parte Richard Cronin**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 331ST JUDICIAL DISTRICT
NO. 9040604, HONORABLE BOB PERKINS, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

In this pretrial habeas corpus proceeding, Richard Cronin seeks the dismissal of the theft indictment pending against him in this cause. Cronin contends that he has already been administratively punished for the alleged conduct and that further punishment would constitute double jeopardy. The writ issued and after a hearing, the relief sought was denied. We will affirm the order.

There is no material dispute regarding the facts. Cronin is a licensed auctioneer. In September 2001, he was employed by the Salvation Army to sell at auction motor vehicles that had been donated to the charity. Cronin retained $38,000 from the sale proceeds, ostensibly as reimbursement for his expenses. After investigating the matter, the Texas Department of Licensing and Regulation (Department) determined that Cronin had violated administrative rules requiring the deposit of all proceeds from an auction into a trust or escrow account within seventy-two hours of the sale, and the payment of all auction proceeds to the consignor/seller within fifteen days of the

sale. *See* 16 Tex. Admin. Code § 67.101(2), (4) (2006). In May 2003, the Department sent Cronin a notice of the alleged violations stating that it recommended an administrative penalty of $4000, but would settle for a penalty of not more than $2000 if Cronin would "immediately come into compliance with all laws and rules" administered by the Department. A settlement was reached and a $2000 penalty was assessed, of which Cronin has paid at least a part. In September 2004, Cronin was indicted for theft based on the same alleged conduct. *See* Tex. Pen. Code Ann. § 31.03(a), (e)(5) (West Supp. 2005). Cronin argues that a conviction on this indictment would constitute a second punishment for the same offense.

Among other things, the Fifth Amendment double jeopardy clause protects against multiple punishments for the same offense. U.S. Const. amend. V; *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969). This protection extends only to the imposition of multiple criminal punishments. *Hudson v. United States*, 522 U.S. 93, 99 (1997) (citing *Helvering v. Mitchell*, 303 U.S. 391, 399 (1938)). The question presented is whether the $2000 penalty imposed by the Department constituted a civil or a criminal punishment for double jeopardy purposes. Because the resolution of this question requires the application of law to undisputed facts, we conduct a de novo review. *See Ex parte Peterson*, 117 S.W.3d 804, 819 (Tex. Crim. App. 2003); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We apply a two-part test:

> Whether a particular punishment is criminal or civil is, at least initially, a matter of statutory construction. A court must first ask whether the legislature, in establishing the penalizing mechanism, indicated either expressly or impliedly a preference of one label or the other. Even in those cases where the legislature has indicated an intention to establish a civil penalty, we have inquired further whether the statutory scheme was so punitive either in purpose or effect as to transform what was clearly intended as a civil remedy into a criminal penalty.

2

*Hudson*, 522 U.S. at 99 (quotation marks and citations omitted).

### *Legislative Intent*

The Department is the primary agency responsible for the oversight of businesses and occupations that are regulated by the state and assigned to the Department by the legislature. Tex. Occ. Code Ann. § 51.051(a) (West 2004). One of the assigned occupations is auctioneering, for which the Department has issued administrative rules. *Id*. §§ 1802.001-.303 (West 2004 & Supp. 2005); 16 Tex. Admin. Code §§ 67.1-.102 (2006). An auctioneer who violates a rule adopted pursuant to this regulatory scheme is subject to an administrative penalty not to exceed $5000 per day for each violation. Tex. Occ. Code Ann. § 51.302 (West 2004). That the authority to issue rules and impose penalties for violations was conferred on an administrative agency is prima facie evidence that the legislature intended the sanctions authorized by section 51.302 to be civil. *See Hudson*, 522 U.S. at 103. This is further evidenced by the legislature's description of the section 51.302 penalty as "administrative."

As evidence that the legislature intended the administrative penalty to be a criminal sanction, Cronin points out that the legislature created an alternative punishment for rules violations by auctioneers. Occupations code section 1802.303 provides that a violation of a rule adopted under chapter 1802 for which a penalty is not provided is punishable as a class C misdemeanor. Tex. Occ. Code Ann. § 1802.303 (West 2004). A class C misdemeanor is punishable by a fine not to exceed $500. Tex. Pen. Code Ann. § 12.23 (West 2003). Cronin argues that by making the "administrative penalty" in section 51.302 ten times harsher than the avowedly criminal alternative penalty imposed

3

by section 1802.303, the legislature "intended for the administrative process to include the criminal aspect." He also notes that the Department officer who signed the notice of alleged violations identified himself as "prosecutor."

If the legislature had intended all rules violations by auctioneers to be treated as criminal violations, it could simply have said so in section 1802.303. By limiting the application of section 1802.303 to rules violations for which no other penalty is provided, the legislature allowed for an alternative to the criminal sanction. That alternative is section 51.302. Although the administrative penalty authorized by section 51.302 can exceed the criminal fine authorized by section 1802.303, this does not compel the conclusion that the administrative sanction was intended to be criminal. We understand the statutory scheme to create an administrative penalty that is civil in nature, with a back-up criminal penalty to be used when there is no applicable administrative penalty. We conclude that the $2000 administrative penalty imposed by the Department against Cronin was intended by the legislature to be a civil penalty.

### *Other Factors*

Even where the legislature has indicated an intention to establish a civil penalty, the statutory scheme may be so punitive in either purpose or effect as to transform what was clearly intended as a civil remedy into a criminal penalty. *Hudson*, 522 U.S. at 99. Among the factors we must consider are whether the sanction: (1) involves an affirmative disability or restraint; (2) has historically been regarded as a punishment; (3) comes into play only on a finding of scienter; (4) promotes the traditional aims of punishment—retribution and deterrence; (5) applies to behavior that is already a crime; (6) has a rational alternative purpose other than punishment; (7) is excessive in

4

relation to this alternative purpose. *Id*. at 99-100. These factors must be considered in relation to the statute on its face, and only "the clearest proof" will suffice to override the legislative intent and transform a civil penalty into a criminal penalty. *Id*. at 100.

The $2000 penalty imposed by the Department does not constitute a disability or restraint. A monetary penalty is a sanction that has long been recognized as enforceable in civil proceedings and is not historically viewed as punishment. *Id*. at 104. Section 51.302 does not contain a scienter requirement. Although deterrence is one factor that the Department must consider in determining the amount of the administrative penalty, *see* section 51.302(b)(3), deterrence may serve civil as well as criminal goals, and the mere presence of this purpose is insufficient to render the sanction criminal. *Hudson*, 522 U.S. at 105. Similarly, the fact that the alleged conduct for which Cronin was sanctioned by the Department constitutes a crime—as evidenced by the instant indictment—does not render the administrative penalty criminally punitive. *Id*. The section 51.302 sanction is part of a statutory and administrative scheme intended to promote high professional standards and fair dealing among auctioneers. *See id*. Considering that Cronin is accused of misappropriating $38,000 from the charity that hired him as an auctioneer, the $2000 penalty imposed by the Department for the rules violations is not excessive.

### *Conclusion*

The $2000 administrative penalty imposed by the Department for Cronin's violations of the regulations governing auctioneers was not a criminal punishment. Cronin's conviction for theft based on the same conduct would not constitute a second punishment for the same offense

5

within the meaning of the Double Jeopardy Clause. The district court's order denying relief in this pretrial habeas corpus proceeding is affirmed.

_____

David Puryear, Justice

Before Justices Puryear, Pemberton and Waldrop

Affirmed

Filed:   September 7, 2006

Do Not Publish